Turley, J.
delivered the opinion of the court.
This bill is filed for a specific execution of an ante-nuptial contract. The proof shows satisfactorily, that the defendant although urgently requested by the complainant before the marriage to convey her own property in trust for her separate use, with an unlimited power of disposal, always refused so to do, upon the alledged ground, that such a course was in violation of all his preconceived opinions concerning the anticipated relation of husband and wife; that it was calculated to impair the independence of the husband, and to subject them both to the strictures and animadversions of others. But at the same time, repeatedly assured her,'that he had no objection, whatever, to her retaining the use and control of her property, unaffected by his marital rights; and that after the marriage was consummated he would execute such a conveyance as might be necessary to effectuate this end. There is no doubt but that the complainant placed implicit confidence in this promise, and as little, that the defendant had no idea whatever, of complying with it. Under this state of affairs the marriage between them was solemnized, and the defendant has since utterly failed, and refused to execute his promise, though repeatedly urged by the complainant to do so: and she has, as the last means of redress, sought the aid of a court of chancery to enforce its execution. If it were not for the statute of frauds and perjuries, there would be no obstacle in the way of granting the relief asked by the complainant, for the *455 contract is clearly established by the parol proof, and the marriage would be a sufficient consideration to support it. But by the 1st section of the act of 1801, ch. 25, commonly called the statute of frauds and perjuries, it is provided, “that no action shall be brought, whereby to charge any person upon any agreement made upon consideration of marriage, unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully áuthorised.”
Now it is not pretended in this case, that there is any written note or memorandum of the contract sought to be executed by this bill; it is admitted that the statute is as obligatory upon a court of chancery when its aid is asked to execute the contract whei e the marriage has taken place, as it would be upon a court of law when such a suit is brought upon it, to recover damages for its breach, when such action will lie, the contract having been entered into by third persons; and it is not denied that the statute precludes the relief in this case unless there be something in the transaction which takes it from within the operation of the statute. This it is urged with much earnestness is to be found in the conduct of the defendant; that under false pretences, he declined making a settlement of complainant’s property upon her previous to the marriage, and falsely induced her to believe that he would do so after marriage, by an express promise so to do, when he had no intention of performing it, but made the same only with the view of inducing her to marry him, and thereby to obtain in his own person an absolute right to her property; that this conduct is of such á character, as to constitute the acts of the defendant a fraud upon his wife, against which a court of chancery will relieve; and which takes the case from within the operation of the statute. That the behavior of the defen *456 dant is a gross and inexcusable fraud upon the complainant, cannot admit of a doubt; but is the fraud of that character which the law contemplates as sufficient to take a case from ’within the operation of the statute of frauds and perjuries. We are constrained to hold that it is not, though we know in so doing we are giving a valuable property to one who has shown himself utterly unworthy of receiving it.
Mr. Story in speaking of specific performance, and the operation of the statute of frauds and perjuries, and of exceptions thereto in his work upon equity jurisprudence, says in sec. .768: “Another exception to the statute, is when the agreement is intended by the parties to be reduced to writing according to the statute; but it is prevented from being done by the fraud of one of the parties. In such a case, courts of equity have said, that the agreement shall be specifically executed; for otherwise the statute designed to suppress fraud, would be the greatest protection to it. Thus if one agreement in writing should be proposed and drawn, and another should be fraudulently and secretly brought in and executed in lieu of the former, in this and .the like cases equity would relieve. So if instructions are given by an intended husband to prepare a marriage settlement, and he promises to have the settlement reduced to writing, and then, fraudulently and secretly prevents it from being done; and the marriage takes effect in consequence of false assurances and contrivance, a specific performance will be decreed. But if there has been no fraud and no agreement to reduce the settlement to writing; but the other party has placed reliance solely upon the honor, word, or promise of the husband, no relief will be granted; for in such cases the party chooses to rest upon a parol agreement and must take the consequences.”
Also, the same author in note 1 to the same section continues, it has sometimes been attempted to except from the statute, cases where the parties have expressly agreed, that *457 their contract should be reduced to writing, but this doctrine except in cases of fraud, (and here the author obviously means fraud in preventing the execution of the writing,) has been expressly denied. Hall vs. Whitney, 1st Vern. 157-159, White Church vs. Bevis, 2nd Bro. Ch. Rep. 565.
In the case of Viscountess Montague vs. her husband, George Maxwell, reported in 1st Peer Williams 618, the bill was brought by the plaintiff against the defendant, her husband, setting forth that he, before her intermarriage with him, did promise that she should enjoy all her own estate to her separate use, that he had agreed to execute writings to that purpose, and had instructed counsel to draw such writings, and that when they were to be married the writings not being perfected, the defendant desired this might not delay the match, in regard his friends being there, it might shame him; but engaged upon his honor, she should have the same advantage of the agreement, as if it were in writing, drawn in form and executed, upon which the marriage took effect, and afterwards the plaintiff wrote a letter to the defendant, her husband, putting him in mind of his promise; to which he wrote her an answer expressing, that he was always willing she should enjoy her own fortune as if sole and that it should be at her command.
To this bill the defendant pleaded the statute of frauds and perjuries.
Upon this plea, the lord chancellor, Hardwicke, said, “In cases of fraud, equity should relieve, even against the words of the statute; as if one agreement in writing should be proposed and drawn, and another fraudulently and secretly brought in and executed in lieu of the former, in this or such like case of fraud, equity would relieve; but when there is no fraud, only relying upon the honor, word, or promise of the defendant, the statute making the promise void, equity will not interfere; nor were the instructions given to counsel for prepar *458 ing the writings material since after they were drawn and engrossed, the parties might refuse to execute them; and as to the letter it consists only of general expressions; indeed had it recited or mentioned the former agreement, and promised the performance thereof, it had been material, but as this case is circumstanced, allow the plea.
These are all the authorities we deem it necessary to quote upon this subject, and they fully and conclusively establish the position that the fraud spoken of which will take a case from within the operation of the statute of frauds and perjuries, is not fraud in making the promise with no intention of complying with it; but a fraud by which the reduction of it to writing is prevented, the parties so intending; and the complaining .party being induced to believe that' it had been done, and this fraud may be perpetrated in two ways, one by signing a false paper, at the same time inducing the belief that it is the true one, and the other by inducing the belief, that the paper had been signed when in fact it had not. But they also clearly establish, that if there was no intention of reducing the promise to writing, or if there were knowledge that though there was an intention of reducing it to writing, that this had not been done, and the marriage be solemnized upon the parol promise of the husband, the promise is void under the statute, no matter with what protestations of sincerity and pledges of honor in such pledges and protestations, and no matter whether the party maldng it, at the time intended to perform it, or contem-. plated a false violation of it; for it is folly to trust when the law prohibits, and avoids the promise.
The authorities quoted, it is true, are upon the English statutes, but upon this subject it is the same with our own; and it is to be observed that much greater latitude has been allowed in England in taking cases from under the operation of this statute, than is sanctioned with us. If then such cases as *459 those! referred to in the authorities, are held in England to fall within the provisions of this statute, much more so will they be held to fall within the provisions of our own.
In the case under consideration, the defendant absolutely refused to make the settlement before marriage; and only promised to dc so after marriage; then there was no fraud practised as to the execution of the promise in writing; no such promise was contemplated by the parties; but the wife, that was to be, relied solely upon the promise of her intended husband to make such settlement after marriage; she then knew that there was no antenuptial contract to be reduced to writing, but that in point of fact there was no antenuptial contract at all; nothing but a verbal promise to make a settlement after marriage. <■
The distinction attempted to be drawn between cases where the party promising at the time intended to perform it, though he afterwards refuse, and where he had no such intention at the time, but made the promise with intention to deceive, insisting that it is a fraud in the latter case which wall be relieved against, though it is not in the former, is too refined and unsubstantial for a basis for judicial decision, and moreover the distinction is not warranted by authority. We would gladly relieve this foolish old woman from the evils of her rash engagment, if we could do so without impairing' one of the wisest statutes of our state, but as it is she must bear the consequences of her ridiculous and imprudent confidence in the promises of one who has wilfully deceived her, and with the sole view no doubt of making her property his own.
The decree of the chancellor dismissing the bill will be affirmed, but as he has erred in giving a decree against the surety of the next friend for cost, he having no power to do so thus summarily, the same will be reversed, and the defendant taxed with all the costs both of the chancery and supreme court.